SOUTHEASTERN FINANCIAL CORPORATION v NATIONAL
BANK OF DETROIT

Docket No. 79087. Submitted June 20, 1985, at Detroit.—Decided
September 16, 1985.

Artistic Furniture Company owed both Southeastern Financial
Corporation and the National Bank of Detroit. Southeastern
had a perfected security interest in Artistic Furniture's inven-
tory and proceeds, while NBD was an unsecured creditor.
When funds were mistakenly deposited in Artistic's account at
NBD, the bank exercised its right of setoff. Southeastern filed
suit against NBD in the Common Pleas Court for the City of
Detroit to recover the funds allegedly converted by NBD,
arguing that its perfected security interest entitled it to the
funds. The Common Pleas Court granted summary judgment in
favor of defendant, finding that the bank's contractual right of
setoff was prior in time to Southeastern's security interest and
thus prevailed. Southeastern appealed to Wayne Circuit Court,
which affirmed, Charles Kaufman, J., holding that a right of
setoff is explicitly excluded from the coverage of Article 9 of
the Uniform Commercial Code, that NBD's right of setoff arose
prior in time to Southeastern's security interest, and that
Southeastern was not prejudiced by the bank's exercise of its
setoff right because Artistic could have written a check to NBD
or any other creditor in the ordinary course of its business.
Despite its ruling, the circuit court also certified the question as
a controlling question of law as to which there is a substantial
ground for difference of opinion. The Court of Appeals granted
Southeastern leave to appeal from the circuit court's affirmance
of the Common Pleas Court's order. *Held:*

1. The provision in Article 9 of the Uniform Commercial
Code that states that the article does not apply to any right of
setoff is intended only to relieve banks from having to complete
the filing requirements of Article 9 in order to create a right of
setoff; it is not intended to exclude setoffs from all of the

REFERENCES FOR POINTS IN HEADNOTE
Am Jur 2d, Secured Transactions §§ 154-156, 487.
What constitutes "inventory" under UCC § 9-109(4). 77 ALR3d
1266.

Article 9 provisions, including the priority sections. Thus, the purpose of that provision is not to remove commercial transactions or conflicts from the operation of the UCC whenever the priority of a setoff is involved.

2. There is no specific priority provision in the UCC that addresses this particular conflict. Therefore, the section of the UCC which gives priority to the Article 9 secured party over unsecured parties controls. As a general unsecured creditor, NBD's claim of setoff should be subordinated to the perfected security interest asserted by Southeastern.

Reversed.

SECURED TRANSACTIONS — BANK'S RIGHT TO SETOFF — PRIORITY.

A creditor's security interest in the inventory and proceeds of the debtor, perfected in accordance with Article 9 of the Uniform Commercial Code, takes priority over a bank's pre-existing right of setoff against funds deposited in the debtor's account (MCL 440.9201; MSA 19.9201).

*Jaffe, Snider, Raitt & Heuer* (by *Stephen G. Schafer* and *Eric A. Linden*), for plaintiff.

*Stephen A. Lang* and *Thomas G. Peck,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and T. M. BURNS and W. J. CAPRATHE,* JJ.

D. E. HOLBROOK, JR., P.J. Plaintiff appeals by leave granted from the lower court's decision holding that its perfected security interest was subordinate to defendant Bank's right of setoff. The debtor, Artistic Furniture Company, owed both plaintiff and defendant. When funds were mistakenly deposited in Artistic's account at defendant Bank, rather than being sent to plaintiff, the bank exercised its right of setoff. It is undisputed that plaintiff had a perfected security interest and that

* Circuit judge, sitting on the Court of Appeals by assignment.

the funds were proceeds.[1] On appeal plaintiff argues that it was error to grant the right of setoff priority.

The trial court based its holding on MCL 440.9104(i); MSA 19.19104(i), which provides that:

"Sec. 9104. This article does not apply:

\*  \*  \*

"(i) To any right of setoff \* \* \*."

Although no Michigan cases have interpreted this section, there are two views as to its meaning. The majority view is that § 9104(i) is only intended to relieve banks from having to complete the filing requirements of Article 9 in order to create a right of setoff. The minority view holds that the provision is intended to exclude setoffs from all of the Article 9 provisions, including the priority sections. See Anno: *Effect of UCC Article 9 upon conflict, as to funds in debtor's bank account, between secured creditor and bank claiming right of setoff,* 3 ALR4th 998. After careful review, we believe that the majority view is the better reasoned. In discussing the identical provision of the Georgia Uniform Commercial Code (Code), the 11th Circuit stated that:

"While the language is plain enough, the conclusion that this section removes from operation of the Code

---

[1] MCL 440.9306; MSA 19.9306 defines proceeds:

"Sec. 9306. (1) 'Proceeds' includes whatever is received *upon the sale, exchange, collection or other disposition of collateral, or proceeds. Insurance payable by reason of loss or damage to the collateral is proceeds, except to the extent that it is payable to a person other than a party to the security agreement.* Money, checks, *deposit accounts,* and the like are 'cash proceeds'. All other proceeds are 'noncash proceeds'.

"(2) Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof \* \* \*."

any controversy between a set-off and a secured party is not warranted by the narrow purpose this provision was intended to serve. Professor Gilmore, a principal reporter for Article Nine of the Code, gives this explanation for the set-off exclusion:

" 'This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course, a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing. A bank's right to set-off against a depositor's account is often loosely referred to as a "banker's lien," but the "lien" usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a bank's right of set-off, because it was called a lien, was a security interest. Hence, the exclusion, which does no harm except to the dignity and self-respect of the draftsmen.' Gilmore, Security Interest in Personal Property (1965), at 315-316." *Griffin v Continental American Life Ins Co,* 722 F2d 671, 673 (CA 11, 1984).

Thus, we believe that the purpose of § 9104(i) was not intended to remove commercial transactions or conflicts from the operation of the Code whenever the priority of a setoff is involved. See *Citizens National Bank of Whitley County v Mid-States Development Co, Inc,* 177 Ind App 548; 380 NE2d 1243 (1978); *Anderson, Clayton & Co v First American Bank of Erick, Oklahoma,* 614 P2d 1091 (Okla, 1980); *Associates Discount Corp v Fidelity Union Trust Co,* 111 NJ Super 353; 268 A2d 330 (1970), and *National Acceptance Co of America v Virginia Capital Bank,* 498 F Supp 1078 (ED Va, 1980).

We acknowledge that there is no specific priority provision that addresses this conflict. However,

underlying the complex provisions of the Code is the keystone rule found at MCL 440.9201; MSA 19.9201 which provides that:

"Sec. 9201. Except as otherwise provided by this act a security agreement is effective according to its terms between the parties against purchasers of the collateral and against creditors."

The effect of this provision is to give priority to the Article 9 secured party over "anyone, anywhere, anyhow" except as provided in the Code. *Citizens National Bank, supra,* and White & Summers, Handbook of the Law Under the Uniform Commercial Code (1972), at 901 and *Griffin, supra,* p 673. There being nothing else in the Code to resolve the priority conflict, § 9201 is controlling. As a general unsecured creditor, defendant's claim of setoff[2] should be subordinated to the perfected security interest asserted by plaintiff.

"The secured party should be able to rely on compliance with the Code's requirements for perfection and search of the public recording system as against the unrecorded interest of a party asserting set-off rights. Were this otherwise, a secured party could not rely on recording but would be required to take additional steps to insure that he was accorded full protection." *Griffin, supra,* pp 673-674.

Accordingly, we reverse the trial court's decision.

Reversed. Costs to appellant.

[2] In characterizing the Bank as a general unsecured creditor we do not intend to diminish long-standing Michigan law which recognizes the special character of a bank's right of setoff. We merely hold that there is no code provision that extends any special protection to the bank as against a perfected security interest.